The following are the facts pertinent to the points raised and decided in this Court, as appear from the statement accompanying the record.
Early in the year 1872, the witness, John W. Davis, heard a statement of the bargain between the plaintiff, Neal, and one Isaac Taylor, the defendant's intestate, in regard to the cultivation *Page 385 
of a certain piece of land belonging to the plaintiff, for the said year of 1872. The contract was a verbal one, and the terms thereof, as the witness understood, were as follows: Taylor had rented a certain portion of Neal's land, for two bales of cotton, Taylor agreeing to keep good fences around the cultivated land and to do the necessary ditching, including the keeping open and cleaned out the old ditches. If Taylor should fail to keep up good fences, and to clean out the ditches as agreed, Neal was to have three bales of cotton instead of two for the rent.
Neal had agreed to make advances to Taylor, to the amount of one bale of cotton, to assist him in making the crop. Taylor, the parties told the witness, agreed that Neal should have the crop, until the advancements and the rent cotton should be paid.
Davis, the witness, further stated, that in June, 1872, he was at Neal's house, when Taylor came in. Witness asked him, "How is your crop?" To this Taylor replied, "I have no crop;" and when asked, "Why not, had he not been tending a crop?" he said, "Yes, but it was Mr. Neal's crop; I consider it belongs to Mr. Neal until the contract is complied with." He, Taylor, further stated, that Neal was to hold the crop until the rent and the advances had been paid.
Taylor did not do up the fences, nor clean out the ditches, nor do any work thereon.
W. H. Fisher, another witness for the plaintiff, testified, that Neal, the plaintiff, was building a house for him in December, 1871, and January, 1872; that during the time, Taylor came to the house where Neal was at work, and proposed to rent a piece of his land. Neal told him that he would rent him the land for that year (1872) for two bales of cotton, if he would clean out the ditches and keep up good fences around the land; but that if he did not do this, he should charge him three bales. To these terms Taylor agreed. The contract was not in writing.
Sometime after this, Taylor informed the witness that he *Page 386 
was in debt to Neal, one bale of cotton for supplies, which Neal had furnished him, and that these advances were to be paid out of the crop. This was several months after the contract had been made. This witness also corroborated the testimony of Davis in regard to what Taylor said about the ownership of the crop; and that he had heard Taylor speak of the contract and the crop in the same terms on several occasions. Taylor did not keep up good fences, not clean out ditches; he did no work on them at all.
This witness further stated, that according to their verbal agreement, Neal was to hold the entire crop until he was satisfied; that Taylor was not to remove any part of the same, nor have any title thereto, until the said indebtedness had been paid.
The following additional facts were admitted on the trial below, viz:
That during the year 1872, Neal advanced to Taylor the sum of ten dollars and seventy cents, after the contract was made.
That after said contract, in the presence and with the consent of the plaintiff, and upon the faith of the plaintiff's verbal promise to see the same paid out of the crop, Taylor contracted an account with H. S. Odom 
Co. for supplies, with which to cultivate his crop, to an amount not to exceed the value of one bale of cotton; which said account was charged on the books of Odom Co. to "J. Taylor — J. D. Neal, security." That the account amounts to the sum of $50.27, and has not yet been paid. That Odom Co. now seek to hold the plaintiff responsible for said account; and that Taylor, a short time before his death, admitted that he was indebted to the plaintiff one bale of cotton for advances.
That Taylor died during the year 1872, after the crop was raised, but before it was gathered; and that the defendant qualified as administrator of his estate, took possession of the crop, and now refuses to deliver the same to the plaintiff, after demand. *Page 387 
That the sheriff of Nash county took into his possession four bales of cotton of the crop raised on the said land by Taylor during the year 1872, by virtue of the writ issued in this cause. That the sheriff re-delivered the said cotton to the defendant, upon his executing to him the bond required by law, with Thomas P. Braswell as surety. Since the commencement of this action, the defendant has paid the plaintiff two bales of cotton.
Upon the foregoing statement of facts, his Honor held:
(1.) That the agreement of Neal to answer for the debt of Taylor to H. E. Odom, c., not being in writing, could not be enforced in law. To this ruling the plaintiff excepted.
(2.) That the terms of the contract between Neal and Taylor, constituted Taylor a tenant and not a cropper; and therefore the plaintiff could not recover, as no title to the crop vested in him by virtue of the agreement.
The plaintiff submitted to a non-suit and appealed.
It was agreed by the counsel for the plaintiff and the defendant, that if the Supreme Court be of opinion, that there is error in the ruling of his Honor, in regard to the effect of the contract, judgment may be entered against the defendant and his surety, Thomas P. Braswell, on the replevin bond, for the sum of $78.70, with interest from the 1st day of January, 1873, and for costs. And if his Honor be in error also in regard to the liability of Neal for the debt, amounting to $50.27, shall be included in said judgment, bearing interest from the time aforesaid — making the judgment against the defendant and in favor of the plaintiff, $128.97 and for costs.
And if the Court shall be of opinion, that the plaintiff is not entitled to maintain this action, judgment may be rendered against him and his surety for costs.
I. The promise of plaintiff to Odom Co., is not within the statute of frauds. *Page 388 
1. Because the statute can only be pleaded by guarantor as defendant. When the plea can be made, it must be when action is brought to charge thepromisor. Only promisor can invoke application of the statute. The unwritten contract is not void. Here defendant is debtor's intestate. Brown on Statute of Frauds, sec. 135; Smith on Contracts, marg. p. 40.
2. Because plaintiff was to hold the crop to pay the debt. Where fund or property, out of which promisor is to pay, is in his hands, he becomes agent or trustee. Even when the fund is to be received by promisor from debtor, statute does not apply. Stanley v. Hendricks, 13 Ired., 86; Browne on Frauds, sections 177, 187, 206; Emmerson v. Slaughter, 22 Howard, 28;Fullam v. Adams, 37 Vt. 391.
3. Because, whether Taylor was tenant or cropper, it was for benefit of plaintiff that advances be made to Taylor. Neal's promise was not collateral but original. He had personal interest. His object was to subserve pecuniary or business purpose of his own, i.e., get his land cultivated. Parson's Contracts, vol. 3, part 2, chap. 5, pp. 24-25, (5th Ed.); Chitty Contracts, 202, 203; Roberts on Fraud, 232; Nelson v. Boynton, 3 Metcalf, 396; Williams v. Leper, 3 Burr., 1886.
II. The agreement made Taylor cropper. In whom the crop remains, dependsin all cases upon the contract. The separation must be made by him who is to hold the crop, and the crop vests in holder. If occupier holds, he is tenant. If landlord holds, occupier is cropper. Walston v. Bryan,64 N.C. 764.
Agreement to pay rent may be qualified by any stipulation showing who is to have title. Verbal agreement that landlord is to have lien, is strong evidence of cropper. Where crop is to remain landlord's, occupier not tenant. State v. Burwell, 63 N.C. 661; Harriton v. Ricks,70 N.C. 7.
The word "rent" has no significance. Denton v. Strickland, 3 Jon., 61; Taylor's Landlord and Tenant. sections 18, 104, 109. *Page 389 
Description of premises necessary in tenancy. Taylor's Landlord and Tenant, 110; Dingman v. Kelly, 7 Ind. 717.
The dividing line between a tenant and a cropper is indistinct, and in many cases hard to run.
In Rogers v. Haywood, at this term, we hold that when the crop is to bethe property of the owner of the land, that fixes the character of cropper, and not of tenant, upon the man who is to do the work. According to that principle, the contract in our case was not an executed one, so as to make a term of years, and vest in Taylor an estate, and a right to bring ejectment, or an action for land and damages, under C. C. P., but was an executory contract, by which Neal employed Taylor to work the land, and was to allow him, as wages, all he could make over two bales of cotton, which the land was to draw, and one bale to pay for provisions, c., furnished, and one bale to secure the necessary work upon the fencing and ditches. Taylor, it seems, was a poor man, and Neal intended to "keep the reins in his own hands." We think his Honor erred in holding that Taylor was a tenant, and not a cropper. This is the second ruling of his Honor, as set out in the case, but we dispose of it in the first instance, because it materially affects his ruling upon the other issue.
We have this case: Neal, at the request of Taylor, says to Odom Co., "Taylor is working for me, the crop he makes is mine, but I am to allow him all that is over two bales, c.," (as set out above). "I will see that you are paid out of his part of the crop, for any provisions you may furnish him, to enable him to make the crop." To this Odom Co. assent, and furnish provisions in pursuance thereto. His Honor was of opinion that this is a promise to answer for the debt or default of an other, and must be in writing under the statute. We take a different view of the matter, and consider its legal effect to be, a verbal order by Taylor or Neal, to pay Odom *Page 390 
Co. for the provisions that might be furnished, out of Taylor's part of the crop. This order is accepted by Neal, all of the parties being present, and it is afterwards acted on, Odom Co. looking to Neal as the acceptor of a verbal order in their favor.
This was all fair and above board, and no statute was required to prevent fraud and perjury. Taylor, as a cropper, had no right to any part of the crop, until it was delivered to him by Neal, after deducting rent,c., yet Taylor was obliged to have something to live on, while he was working for Neal. So the understanding between Neal, Taylor and Odom Co., was exactly what might have been expected under the circumstances, which establish the relation of a cropper, and there was no more use for it to be in writing, than for any other verbal arrangement, which the interest and convenience of parties induce them to make, without taking the trouble to draw writings.
Error. Judgment reversed, and judgment for plaintiff according to agreement in the case sent as part of the record.
PER CURIAM. Judgment accordingly. *Page 391