S. C. WHITEHURST v. E. P. PADGETT AND M. A. JAMES.

(Filed 13 December, 1911.)

1. Statute of Frauds—Promise to Pay Debt of Another.

A promise is not within the statute of frauds requiring that it be in writing and signed, to bind the promisor to answer the debt of another, if ·it is an original one based upon a consideration; and it is original, whether made before or at the time the debt is created, if the credit be given solely to the promisor or to both promisors as principals; or if it is based upon a new consideration of benefit or harm passing between the promisor and the creditor; or if it is for the benefit of the promisor and he has a personal, immediate, or pecuniary interest in the transaction, in which a third party is also obligor.

.2. Same.

When the promise relied on to bind the promisor under the statute of frauds to pay the debt of another, does not create

an original obligation, and is collateral and merely superadded to the promise of another to pay the debt, who remains liable therefor, the statute applies and the second promisor is not liable upon his promise, unless it was reduced to writing and signed as required by the statute; and this is true whether his promise was made at the time the debt was created or afterwards.

3. Same—Landlord and Tenant—Assertion of Tenant—Direct Interest.

When a tenant of a farm has applied to a merchant to furnish him with fertilizers for making the crop on the leased premises, saying that the landlord would pay for them, the assertion of the tenant will not of itself render the landlord liable; but if the latter, when called upon by the merchant at the time of the transaction, says, "All right, go ahead and furnish (the lessee) and I will see that you get the money," his words may amount to a binding and sufficient promise under the statute of frauds, as he had a direct and pecuniary interest in the making of the crop as the landlord of the first promisor.

4. Statute of Frauds—Landlord and Tenant—Joint Promisors—Evidence—Questions for Jury.

In this case the question whether the landlord intended to become a principal with the lessee of his lands, in the debt for fertilizers furnished to make a crop thereon under his promise to see that the merchant got his money, was fairly submitted to the jury under correct instructions of the court upon the evidence.

5. Statute of, Frauds—Landlord and Tenant—"Promise" Relied on—Evidence.

Evidence tending to show that a landlord, at the time of the transaction, promised a merchant furnishing his tenant fertilizers with which to make a crop on his land, that he would "see" that the fertilizer was paid for, is sufficient evidence to go to the jury as to whether the merchant relied upon the promise at the time it was made, and furnished the fertilizer upon the faith of it.

6. Evidence—"Best" or Primary Rule—Book Entries—Parol Evidence—Collateral Matters—Competency—Harmless Error—Appeal and Error.

In an action against the landlord and tenant for fertilizers furnished to the latter to make a crop on the leased lands of the former, seeking to hold the landlord answerable on his promise to "see" that the fertilizers were paid for, testimony of a witness for the plaintiff that the fertilizers were charged to both defend-

ants, is competent: (1) The best or primary rule does not apply, for the book entries were not directly involved in the issue, and were not required to·be in writing by the statute of frauds; (2) it was irrelevant as to the tenant, and therefore harmless, and not having been objected to by the landlord, it is not reviewable on appeal as to him.

7. **Appeal and Error—Objections and Exceptions—Harmless as to One—Defendant.**

   When there are two or more defendants and an exception to the admissibility of evidence is taken so that it does not appear by which one, it will not be held reversible error on appeal when it is harmless as to one of them.   (Rule 27, 140 N. C., 495.)

APPEAL by defendants from *Ferguson, J.,* at January Term, 1911, of PITT.

*F. G. James & Son for plaintiff.*
*Julius Brown for defendant.*

WALKER, J.   Plaintiff had a store at Grindool, and defendant, Alexander Padgett, lived on the Barnhill land, which he had leased from his codefendant, M. A. James.   There was evidence tending to show that Whitehurst, at the request of Padgett and James, furnished Padgett with fertilizers to the amount of $284.31, for use on the Barnhill place, as tenant of James.   The material facts, according to the plaintiff's testimony, were these: Padgett applied to Whitehurst for the fertilizer·and told him that James would pay for it.   Whitehurst saw James afterwards, who said to him: "All right, go ahead and furnish Padgett, and I will see that you get your money."   He was afterwards told by Whitehurst that the debt for the fertilizer was due, when he said: "I will see that you get your money, if I do not get a cent."   There was evidence for the defendant that no such promise had been made by James, but, on the contrary, that ·Whitehurst had refused to accept the promise of James to pay for the fertilizer.   Defendants also relied upon the statute of frauds. The court charged the jury that Padgett could not bind James by any declaration that the latter had told him to buy the fertilizer on his credit and responsibility, unless they found that James had authorized the purchase by Padgett from Whitehurst, and agreed to become liable for the same; that they would

consider all the evidence and find therefrom whether such authority had been given, and that if they should find that the authority was given, their verdict would be for the plaintiff; otherwise, for defendant. The jury returned a verdict against defendants, and they appealed.

We see no objection to the charge of the court. In *Peele v. Powell,* 156 N. C., 553, we held that a promise is not within the statute of frauds, if it is based upon a consideration and is an original one, and that it is original if made at the time or before the debt is created, and the credit is given solely to the promisor or to both promisors, as principals; or if the promise is based upon a new consideration of benefit or harm passing between the promisor and the creditor; or if the promise is for the benefit of the promisor and he has a personal, immediate, and pecuniary interest in the transaction, in which a third party is the original obligor; but if the promise does not create an original obligation, and is collateral and merely superadded to the promise of another to pay the debt, who remains liable therefor, the statute applies, and the second promisor is not liable upon his promise, unless it was reduced to writing and signed, as required by the statute; and this is true whether his promise was made at the time the debt was created or afterwards. Numerous authorities were cited to support these principles, and among others, the following: *Neal v. Bellamy,* 73 N. C., 384; *Dale v. Lumber Co.,* 152 N. C., 653; *Hospital Association v. Hobbs,* 153 N. C., 188; *Morrison v. Baker,* 81 N. C., 80; *Shepard v. Newton,* 139 N. C., 536; *Haun v. Burrell,* 119 N. C., 547; *Horne v. Bank,* 108 N. C., 119; Browne on Statute of Frauds, sec. 197; and the authorities sustain the rules laid down by the court.

Whether the defendant James intended to become a joint principal with Padgett, his tenant, was fairly and correctly submitted to the jury by the court upon all the evidence, and there was more than we have considered it necessary to recite. James had a direct personal and pecuniary interest in the transaction, and made the promise, as the jury finds, at the time the goods were furnished or the debt was contracted, and it is evident, the jury having found the fact as to the promise in favor of plain-

tiff, that he relied upon it at the time and furnished the ferti-
lizer upon the faith of it. In the case of *Threadgill v. McLen-
don*, 76 N. C., 24, where words almost identical and, at least,
substantially the same as those used by James, according to
plaintiff's testimony, the Court held that it was properly left
to the jury to say whether the credit was not in the first instance
given to the promisor, who was a landlord and who, as the Court
says, was interested to have his tenant or cropper furnished
with necessary supplies to make his crop and had a lien upon it.
That was the first reason for the decision, and it is applicable
to this case. It would not be fair for the defendant to rely upon
the statute, under such circumstances, it having been passed to
prevent frauds and not to encourage them, as was said by *Judge
Pearson,* for the Court, in *Threadgill v. McLendon, supra.*

The plaintiff was asked by his counsel to whom he had charged
the goods on his books, and replied that they were charged to
Padgett and James. Defendants objected to the question, but
it was irrelevant as to Padgett, and, of course, harmless, and
therefore was not objectionable as to him. It does not appear
that James individually objected to it. If we treat the objec-
tion as having been made by one of the defendants, and not by
both, it does not appear which one made it, and the objection,
being untenable as to Padgett, must fail. Rule 27 (140 N. C.,
495). But we think the "best or primary rule" does not apply.
The book entry and its contents are not directly involved in the
issue. The plaintiff was not suing upon the entries, but upon
the contract, which was not required to be in writing. McKel-
vey on Evidence (2 Ed.), pp. 425-428, after stating the old rule,
thus refers to the modern rule: "Where the writing is not in
issue, but merely collateral to it, it is held that the rule has no
application, and parol evidence may be given, even though it
covers the contents of the writing. An interesting question
arises where the allegation is that a book or documents do not
contain certain matter. It has been held here that oral testi-
mony of any one who has examined the writing may be given in
support of the allegation. In a certain sense the writing itself
may certainly be regarded as the best evidence of what it does
not contain, as well as what it does contain, yet there may not

*In re* JENKINS.

be the same difficulty in establishing that a certain matter is not contained in a writing as in determining with exactness its actual contents, and there may, therefore, be less reason for the enforcement of the best-evidence rule." He cites the case of *Coonrod v. Madden,* 126 Ind., 197, and our case of *Ledford v. Emerson,* 138 N. C., 502, which seems to be as extreme an application of the rule of the best evidence as can be supposed.. It was there held that "the rule excluding parol evidence as to the contents of a written instrument applies only in actions between parties to the writing, and when its enforcement is the substantial cause of action, and not where the writing is collateral to the issue."

We have carefully considered the other rulings of the court, to which exceptions were taken, and find no reversible error therein.

No error.